(101 App. Div. 369)

## CAMPBELL et al. v. EMSLIE.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. SALES—EVIDENCE OF SALE—SUFFICIENCY.

In an action for the price of goods sold, evidence *held* sufficient to sustain a finding that the goods were not sold by plaintiffs, but that they were consigned to defendant by another firm.

2. SAME—EVIDENCE—SUFFICIENCY.

In an action for the price of goods sold, evidence considered, and *held* sufficient to show that the bookkeeper of defendant was in fact the representative and agent of plaintiff, to whom defendant was indebted on a prior transaction.

3. SAME—EVIDENCE—ADMISSIBILITY.

In an action for the price of horses, defendant claimed that the horses had not been sold him by plaintiffs, but had been shipped him on consignment by another firm in which plaintiffs were interested, and it was shown that an agent of plaintiffs, who was connected with the business of defendant for the purpose of protecting plaintiffs' interests in an indebtedness from defendant to plaintiffs, had admitted to defendant that an abbreviation of the name of the consignor in the carrier's receipt for the charges paid by defendant on the horses stood for the other firm. *Held*, that the admission and receipt as affected by the admission were properly admitted as against plaintiffs.

Hatch and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by J. A. Campbell and others against James M. Emslie. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Franklin Pierce, for appellants.

J. Campbell Thompson, for respondent.

O'BRIEN, J. The complaint in this action alleges that in the month of October, 1903, the plaintiffs, composing the firm of Camp-

bell & Reid Western Sales Stable Company, sold and delivered to
defendant 47 horses at the agreed price of $7,647.25, which has not
been paid, although due, and judgment is demanded for that sum
and interest. The answer, in so far as it need be considered, ad-
mits that the horses referred to in the complaint were delivered
to the defendant, but denies that they were sold to him by the plain-
tiffs, and alleges that he received them from the Campbell Horse
Company. Upon the trial the court, without objection from either
party, stated that the issues to be determined were: First, whether
the horses had been sold, or had been only consigned, to the de-
fendant; and, second, if they had been sold to him, whether the
sale was by the plaintiffs' firm or by the Campbell Horse Company.
And at the close of the evidence the court in its charge stated the
contentions of the respective parties, and defined the issue to be
determined by the jury as follows: "The plaintiffs claim that they
are and were copartners in business under the firm name of the
Campbell & Reid Western Sales Stable Company, and that as such,
in the latter part of August in the year 1903, they and the defendant
had an understanding to the effect that plaintiffs were to ship to
the defendant horses for which the defendant was to pay the cost
price and added expenses," and also certain specified commissions.
"The defendant, on the other hand, claims that he had no trans-
actions whatever with the plaintiffs' firm, known as the Campbell
& Reid Western Sales Stable Company, but that he dealt only with
the Campbell Horse Company, with whom he claims that he had
an undertaking to the effect that the title to the horses which such
firm was to ship to him would remain in the Campbell Horse Com-
pany until they were sold, and that, when sold, defendant was to
remit the actual cost of the horses," together with the amount of
certain specified expenses and commissions, and that all over and
above "such cost price, added expenses, and commissions the de-
fendant was to retain as his profit." No exception was taken by
either party to this portion of the charge, and the jury found for
the defendant upon the issue thus raised. From the judgment en-
tered upon the verdict, and from the order denying the motion for
a new trial, the plaintiffs have appealed.

It is not necessary to set out in detail the testimony bearing upon
the conflicting claims of the respective parties. It is sufficient to
say that there was a sharply contested question of fact as defined
by the court, which was properly submitted to the jury, and the
finding thereon is not against the weight of evidence. The confu-
sion that has arisen as to the identity of the real party with whom
the defendant dealt was caused by the circumstance that both firms
were engaged in the same business—the buying and selling of
horses on commission; by a similarity in the names of the two
firms; and by the fact that the members of the plaintiffs' firm were
all members of the Campbell Horse Company, and the transactions
of the two firms were so intermingled that the business of the one
could with great difficulty be distinguished from the business of the
other. Concerning the defendant's dealings with these firms, the

evidence disclosed the following facts: Prior to June 11, 1903, he had been a copartner with the horse company under the firm name of James Emslie & Co., engaged in buying horses in the West, bringing them to the East, and disposing of them in New York City and Weehawken, N. J. On the last-mentioned day the partnership was dissolved by voluntary agreement, the defendant succeeding to the business, acquiring title to all the horses on hand, and agreeing to pay for the horse company's interest in the partnership the sum of $37,476.70, the same to be paid in installments at the times specified in the dissolution agreement. The defendant testified that after the dissolution he had conversations with one Campbell and one Reid, who were members of both companies, relative to the purchase by him of horses from the Campbell Horse Company; and that in one of the conversations with Reid, who seems to have been the active business manager of the horse company in the East, a contract was made by which the horse company agreed to consign horses to him, the title to remain in it until he paid for them; and that when he had sold them he should remit to the horse company the amount which it had paid for the horses, plus the reasonable and proper expense for feeding and shipping, the balance to be retained by him as profit. He testified further that several car loads of horses were sent to him under this contract, and, among them, the two loads which comprise the horses that are the subject of this action. His testimony is contradicted in many respects by Reid and Campbell, but, in so far as he stated that he was dealing with the Campbell Horse Company, he is corroborated by the undisputed fact that certain checks given by him in payment for horses delivered subsequent to the making of the alleged contract with the horse company are payable to the order of that firm. And this corroboration is strengthened by the fact that these checks were actually made out by one Van Ness, who was the representative of these plaintiffs, and familiar with their business dealings with the defendant. The credibility of the witnesses was a question for the jury, and it does not need further analysis of the testimony to show that there was ample to support the verdict in favor of the defendant's claim. Therefore the judgment entered upon that verdict must be affirmed, unless error was committed on the trial in the admission of evidence or in the charge of the court.

Before taking up that branch of the appeal, and in order to properly understand the force of certain objections made by plaintiffs, it is necessary to consider the peculiar standing of the man Van Ness, who has already been referred to. He was originally in the employ of the Campbell Horse Company, and when it entered into partnership with the defendant he was sent East, nominally to act as bookkeeper of the new firm at its office in Weehawken, N. J.; but it is clear from the entire evidence in the case that his real duties were to look after and protect the interests of these individual plaintiffs in that partnership, as distinguished from the interests therein of this defendant, the other partner. Van Ness kept the people whom he represented informed of all that transpired in

that business, making regular reports to them of its dealings and financial condition, and, when the partnership was dissolved, a provision was inserted in the dissolution agreement that he should remain with the defendant until the indebtedness incurred for the purchasing of the business should have been finally paid. By the terms of the agreement the final payment was due on September 10, 1903, but it will be noticed that Van Ness' retention was not limited so as to terminate on that date, but he was to continue to represent the plaintiffs until the indebtedness should have been actually paid, irrespective of whether that payment was made upon the date specified or not. The agreement recited that he should perform "the same duties that he has hitherto performed, provided the Campbell Horse Company shall so desire; the wages of said Van Ness while so employed however, shall be paid by the Campbell Horse Company." Certainly under such an agreement he could not be regarded as the representative of the defendant, who had no right to discharge him, and apparently had no right to prescribe his duties. Indeed, it can fairly be inferred from the testimony of Van Ness himself that he considered himself under the directions of these plaintiffs and employed to protect their interests. This inference is strengthened by a letter from the plaintiff Reid to the defendant, dated September 4th, written upon the business stationery of the Campbell & Reid Western Sales Stable Company, in which he said:

"I will expect you after September 10th, to employ Van Ness at your own expense, but I am to have the privilege of him making reports of the business to me just exactly as he has done for the past three months, until a final settlement is made as per contract."

It will be observed that the letter was on the regular business paper of plaintiffs' firm (not of the horse company), and, although the writer required that the defendant should pay Van Ness' salary after the date mentioned, the plaintiffs were still the parties who could prescribe his duties, and who could insist upon his retention in the position in which he had been placed by them; and it appears that up to November, when the defendant's business was seized by the sheriff, Van Ness remained with him, without apparently any change in his duties. He drew the checks, kept the books, apparently attended to the financial part of defendant's business, and rendered detailed accounts of the business to his principals, the individual plaintiffs, sending them trial balances showing exactly who the creditors and debtors of the defendant were. He admits that during his employment he was practically his own boss so far as the defendant was concerned, and the testimony would warrant a finding by a jury, if regarded as a disputed question, that he was acting as the agent and representative of these plaintiffs, whose interests he was guarding, and who were responsible for his continued employment in the defendant's establishment. We think the testimony would justify a finding not only that Van Ness represented Reid, Campbell, and the other members of the horse company, in so far as they had an interest in that firm, but also that he represented their interests in the Campbell & Reid Western

Sales Stable Company. Mr. Reid, when upon the stand, was shown certain checks, some to the order of the Campbell Horse Company, and one to the order of the Campbell & Reid Western Sales Stable Company, and, in response to interrogatories, he said: "They are made out in Van Ness' handwriting—he was our representative;" apparently making no distinction between the interests of himself and his companions in the horse company and their interest in the Sales Stable Company, from all of which it would appear that he was placed and retained there by the plaintiffs to represent their interests in both firms, and they, by receiving and cashing checks made out by him, sometimes to one firm and sometimes to the other, in payment of horses delivered to defendant, sanctioned and ratified his conduct in that respect. The objectionable testimony should therefore be considered in the light of the status held by Van Ness. Upon his direct examination he testified that he had a conversation with the defendant concerning the invoices of the two car loads of horses now in dispute, in which defendant raised the question as to the parties who had sold the horses to him. The witness testified:

"Emslie asked me to show him the invoices of the last horses received, and I went to the safe and took the invoices out of the drawer. He said to me—He handed it back to me, and said, 'Why, that is Campbell & Reid Western Sales Stables,' and I asked him why, and he said, 'Well, I just wanted to know,' and that is all there was to it. I put them back in the safe, and they remained there."

When the defendant was put upon the stand, he in turn was asked to state this conversation. This was objected to as immaterial and irrelevant. The objection was overruled, and the plaintiffs excepted. We think the trial court properly admitted this testimony. The plaintiffs having called for the conversation in the direct examination of their own witness, and one who might be found to be their representative, the defendant was, of course, entitled to state his version of it. He then testified concerning the conversation that he said to Van Ness: "I thought I was dealing with the Campbell Horse Company all the time, as the railroad bills said that the horses were consigned from the Campbell Horse Company." The witness was then asked: "Did you say anything about the railroad bills?" and he responded: "Yes, sir, I produced two or three of them and they were all 'C. H. Co.' I showed him that railroad bill (showing paper), and said: 'That is C. H. Company'—that means Campbell Horse Company." He was next asked, "What did he say to you with reference to the 'C. H. Co.'?" and he answered, "Campbell Horse Company."

The invoice, so called, which was in reality a bill from the express company for the carriage or freight of the horses, was regarded by both parties as part of res gestæ; and for this reason, as well as for the reason already given, the defendant's version of the conversation regarding it was, we think, admissible.

The recapitulation of the testimony shows its materiality and competency. It bore upon the question of which party shipped the horses to the defendant, and the statement made by Van Ness that "C. H. Co." meant the "Campbell Horse Company" was competent, we think,

as a statement by him which would have been binding upon the plaintiffs' firm if the jury should find from the evidence, as they were justified. in doing, that he represented the interests of the plaintiffs in that firm.   Surely such a statement by one who was authorized to represent them was competent as bearing upon the question of whether they shipped the horses.

The invoice or bill referred to was then offered in evidence, and objected to by plaintiffs as irrelevant, incompetent, and not binding upon them.   The objection was overruled, and exception taken.   We think this ruling also was proper.   The bill or invoice was part of the res gestæ; it showed the delivery of the horses and the payment of the freight therefor.   The defendant had testified that the horses were shipped under the contract which he had with the Campbell Horse Company that they should send him horses and charge him the price paid therefor, together with shipping expenses.   Here was a receipted bill showing the amount of the shipping charges upon these particular horses, and that the same had been paid.   It was a piece of evidence that the jury had a right to have before them in determining whether the horses had been shipped pursuant to the contract claimed by the defendant with the Campbell Horse Company.

Exception was also taken by the plaintiffs to so much of the charge of the court as referred to this conversation and the freight bill.   What the court said in that respect is as follows:

"It appears that the receipt to which reference was made was given by the U. S. Express Company to the defendant.   Hence it is not binding upon plaintiffs, except in so far as the plaintiffs may have made admissions with respect thereto; but the receipt itself is not binding, I repeat, except you find admissions were made by the plaintiff in regard thereto. * * * If you find that Van Ness was the agent of the plaintiffs, and not of the defendant, and that he made any admissions with respect to the receipt so given by the U. S. Express Company, you may take the same into consideration, together with all the other evidence and circumstances in the case."

We think this charge was correct.   It coincides with our idea of the force and effect to be given to the bill or invoice.   It left for the determination of the jury the question of whether or not Van Ness was the agent of the plaintiffs, and, as we have already pointed out, there was sufficient evidence to justify a finding that he was.   It instructed the jury that the freight bill was not binding, except so far as the plaintiffs, through this person, might have made admissions with respect to it; and it instructed the jury that under these restrictions they might take the freight bill into consideration as they would any other evidence in the case.   All of this was proper.

We have examined the other exceptions taken by the plaintiffs, but find none that requires a reversal; therefore the judgment and order appealed from must be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

HATCH, J. (dissenting).   I am unable to concur in the view expressed by Mr. Justice O'BRIEN in this case.   It is undisputed that the plaintiffs shipped to the defendant from East St. Louis, in the state

of Illinois, to the city of New York, 47 head of horses, of the value of $7,647.25; that the defendant received and sold the horses, and has not paid therefor. The sole issue between these parties was whether the defendant, in ordering the horses, dealt with the Campbell, Reid & Western Sales Stable Company or with the Campbell Horse Company. The defendant claims that he dealt with the latter, and not the former, and that therefore he is under no liability to pay the plaintiffs for the horses thus received. There is no pretense upon his part, however, that he has ever paid anything on account of the horses, although received and sold by him. An issue was sought to be raised in the case that the defendant entered into a contract with the Campbell Horse Company by which the latter was to consign horses to the defendant for sale by him, the proceeds to be remitted when the sales were made, and not before. Such defense, however, was not interposed in the answer of the defendant. It first denies any knowledge or information of the existence of the copartnership between the plaintiffs; then denies each and every allegation of the complaint, except that the plaintiff received 47 horses on the dates referred to in the complaint; but denies that they were received from the plaintiffs, and alleges that they were received from the Campbell Horse Company. For a further, separate, and distinct defense, and as a counterclaim, the answer alleges that in the month of October, 1903, the defendant requested the Campbell Horse Company to ship him 47 horses at once upon receipt of the defendant's order, the horses to be suitable for hauling heavy trucks used in the coal business, to be sound and kind and suitable for such business, and to be on hand the first part of October for the buying coal merchants; that the Campbell Horse Company undertook and agreed to fill such order and to sell to said defendant said horses at the prices which they paid therefor, plus the reasonable and proper expense of feeding and shipping, added to the purchase price thereof, and to deliver said horses on time to supply the demand in the coal trade. The answer further averred that the plaintiffs violated said agreement; that they shipped 47 horses, and charged or attempted to charge defendant therefor prices far in excess of their actual value, and far in excess of the purchase price therefor; that the horses were wholly unsuited for the purposes for which defendant had purchased them; that they were unsound, were not kind, and were in an unhealthy and unfit condition for the purpose for which they were intended. The answer then avers that the acts of the Campbell Horse Company in failing to fulfill their contract caused the defendant to lose an opportunity to supply his customers in the coal trade with horses for which he had orders; that his reputation and standing as a horse dealer, by reason of the unsound horses sent him, were injured and impaired, and he suffered damage in the sum of $10,000, for which sum he demanded judgment, together with costs. It is apparent, therefore, that the answer raised no issue as to the consignment of the horses, but in terms it avers a purchase of the same from the Campbell Horse Company. While it is true that a general denial would authorize proof showing that the plaintiffs never had a cause of action against the defendant, and it would be a sufficient answer to the plaintiffs' claim under such

a plea to show that defendant never purchased from the plaintiffs, or never in fact made any purchase of the horses from any one, and that they were shipped on consignment, yet the denial in the present case does not go to that extent, because it excepts in its denial, and admits that the defendant received the horses from the Campbell Horse Company; and then it proceeds to aver the terms and conditions under which it received them, which showed the transaction to have been a purchase and sale of the horses upon specified terms, and excludes any theory of a consignment.

Upon the trial evidence was offered by the defendant tending to establish that the horses were consigned to him by the Campbell Horse Company. To this testimony objection was interposed that it was incompetent, immaterial, irrelevant, and was not embraced within the pleadings. The court overruled the objection, to which the plaintiffs excepted. Subsequently a motion was made to strike out the testimony, and the court reserved its decision. Defendant's counsel thereupon stated that, if the court held against him upon such question, he should ask leave to withdraw a juror and amend his answer. It does not appear from the record that the court ruled upon the motion to strike out, or that the answer was amended, and it in fact submitted such question to the jury in its charge. The evidence, however, was inadmissible, the objection interposed properly raised the question, and reversible error was committed in its reception.

It further appeared that prior to this transaction the defendant and some of the plaintiffs had entered into a copartnership for dealing in horses in the city of New York; that during the period of the existence of such copartnership one Van Ness was employed, at the stable where the business was carried on, as the representative of the plaintiffs, who were then in the West. He took charge of the financial end of the business conducted by the firm. After the dissolution of the copartnership the plaintiffs, or some of them, continued to deal with the defendant, who carried on business for himself in the city of New York. This dealing was of such a character that Van Ness was retained in connection therewith as the agent and ·representative of the plaintiffs or some of them. Upon the trial the defendant, for the purpose of showing that he had dealt in the purchase of the horses with the Campbell Horse Company and not with the plaintiffs, produced a receipt or freight bill issued by the United States Express Company to the defendant for freight upon a car of horses. Upon the face of this receipt appeared the letters "C. H. Co." · After this action was commenced the defendant testified that he went to Van Ness and stated to him that he thought he was dealing with the Campbell Horse Company, and thereupon sought to introduce in evidence a conversation had with Van Ness respecting such matter. This was objected to by the plaintiffs upon the ground that it was immaterial, irrelevant, and was not proper by way of contradiction to anything which Van Ness had testified to, as it did not call the witness' attention to specific statements made by him. Motion was also made to strike out the testimony. The objection was overruled, and the witness answered that he said to Van Ness: "I said I thought I was dealing with the Campbell

Horse Company all the time, as the railroad bills said that the horses were consigned from the Campbell Horse Company." He was then asked if anything was said about the railroad bills, to which he replied that he produced two or three of them, and they were all "C. H. Co." Defendant further said: "I showed him that railroad bill (showing paper). I said, 'That is C. H. Company.' That means Campbell Horse Company." Thereupon the defendant offered the bill in evidence. It was objected to as irrelevant, incompetent, and not binding upon the plaintiffs. The objection was overruled, an exception was taken by the plaintiffs, and the bill was received in evidence. Defendant was then asked: "Q. What did he say to you with reference to the 'C. H. Co.'? A. Campbell Horse Company." This was objected to, and the objection overruled, to which an exception was taken. The testimony thus offered and received was clearly erroneous, for two reasons: First. It permitted the defendant to testify to his own declarations, and to state that he dealt with the Campbell Horse Company and not with the plaintiffs, and, under pretense of a conversation with Van Ness, his entire declaration bearing upon the only issue properly in the case was permitted to be given. It needs neither argument nor authority to establish that such declarations were improper and incompetent. It was not pretended that Van Ness had given specific evidence for the plaintiffs in relation to such subject, and, if admissible for purposes of contradiction, the defendant was required to specify the particular thing to which Van Ness had testified and ask him the direct question. It was not offered nor received upon such theory. On the contrary, it was offered and received upon the theory that Van Ness was the agent of the plaintiffs, and consequently a general conversation, without regard to contradiction, was admissible. Clearly this is not so. Second: Nor was it admissible as constituting it an admission by Van Ness, based upon the ground of his agency for the plaintiffs. The declarations of an agent may be admissible in evidence when a part of the res gestæ, but, in order to be admissible as such, "they must be made not only during the continuance of the agency but in regard to a transaction pending at the very time." Anderson v. Rome, Watertown & Ogdensburgh R. R. Co., 54 N. Y. 334; Taylor v. Commercial Bank, 174 N. Y. 181, 66 N. E. 726, 62 L. R. A. 783, 95 Am. St. Rep. 564. The declaration of Van Ness does not come within the rule. It was not embraced within the scope of his employment in respect to which he could make an admission; it was not of a present, pending transaction, but of one long since passed, and with respect to which he was not authorized to bind the plaintiffs. The declaration itself bore upon a material issue raised by the pleadings, as its effect was to show that the dealings were had with the Campbell Horse Company, and not with the plaintiffs. The bill itself to which the conversation and declaration related was also inadmissible. It was not pretended that the bill emanated from the plaintiffs. It was a mere freight bill issued by the express company to the defendant, and there is no proof to show that the plaintiffs ever had any knowledge upon the subject, or that their attention was ever called to it, and they were in no sense parties to it. This evidence was not only im-

proper for these reasons, but the use made of it by the court in submitting the case to the jury was most damaging to the plaintiffs. Upon such subject the plaintiffs' counsel asked the court to charge that the receipt given by the express company, and not by the plaintiffs, was not binding upon them and could not be considered. Attention was then called by the defendant to the conversation had between him and Van Ness, and, after further colloquy, the plaintiffs again asked the court to charge "that the evidence does not show that there were any admissions made by the plaintiffs in regard to this receipt. The Court: Were there no conversations about it? Mr. Baldwin: None whatever. The Court: With Van Ness? Mr. Thompson: Yes, their agent. The Court: If you find that Van Ness was the agent of the plaintiffs, and not of the defendant, and that he made any admissions with respect to the receipt so given by the U. S. Express Company, you may take the same into consideration, together with all the other evidence and circumstances in the case." The plaintiffs' counsel excepted to the refusal to charge as requested, and to the charge as made. It is clear, therefore, that the jury were not only authorized to consider the receipt given by the express company, but they were also authorized to find that Van Ness made the admission concerning it, that the shipment was from the Campbell Horse Company, and, if they found that Van Ness made such admission, then it was binding upon the plaintiffs, and from the whole the jury were authorized to conclude, as they did, that the defendant dealt with the Campbell Horse Company and not with the plaintiffs, and that the latter, therefore, had no cause of action against the defendant. The improper evidence was used, and, as used, operated to establish a controlling element in the case.

It follows from these views that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.